**UNITED STATES DISTRICT COURT**
Western District of Texas

**FILED**

August 22, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ cap _____
DEPUTY

Ansys, Inc
Plaintiff,
v.
John Doe, Subscriber Assigned IP Address 75.180.17.170,
Movant.

Civil Action No.6:25-cv-00292-ADA-DTG

**MOTION TO QUASH SUBPOENA AND TO PROCEED ANONYMOUSLY**

Movant, identified by the subpoena as the subscriber assigned IP address 75.180.17.170, respectfully moves this Court, pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure, to quash the subpoena issued to Movant's internet service provider. Movant further requests permission to proceed anonymously as "John Doe, Subscriber Assigned IP Address 75.180.17.170," and in support states as follows:

**I. BACKGROUND**

1. On or about 08/01/2025, Movant became aware of a subpoena issued by Plaintiff to Movant's internet service provider seeking Movant's personally identifying information.
2. The subpoena appears to link Movant's name to alleged downloading activity.
3. Movant is not the individual who engaged in the alleged conduct. At the time of the alleged activity, Movant resided in another state, and the internet service was being used by a tenant at Movant's rental property. That tenant has since vacated the premises.
4. Movant had no knowledge of, access to, or involvement in the alleged activity.

**II. GROUNDS FOR OBJECTION**

1. Misidentification. The subpoena wrongly assumes that the subscriber of an IP address is the person who engaged in the alleged infringement. Courts have repeatedly recognized that IP subscribers are not necessarily infringers. Movant had no involvement in the alleged conduct.
2. Undue Burden. Compliance with the subpoena would impose an undue burden on Movant, who is an uninvolved third party and possesses no information beyond what the internet service provider already maintains.
3. Overbreadth and Irrelevance. The subpoena seeks information that is not relevant or proportional to the needs of the case. Identifying Movant's personal information would not identify the actual infringer and risks exposing an innocent party to undue harm.
4. Privacy Concerns. Disclosure of Movant's personally identifying information would cause unnecessary invasion of privacy and potential reputational harm to an innocent subscriber.

**III. REQUEST TO PROCEED ANONYMOUSLY**

Movant further requests leave to proceed anonymously as "John Doe, Subscriber Assigned IP Address 75.180.17.170" in order to protect Movant's privacy and to prevent wrongful public identification. Courts have granted such requests in similar cases where the subpoena risks exposing uninvolved subscribers.

**IV. RELIEF REQUESTED**

For the foregoing reasons, Movant respectfully requests that this Court:

1. Quash the subpoena issued to Movant's internet service provider;
2. Permit Movant to proceed anonymously as "John Doe, Subscriber Assigned IP Address 75.180.17.170"; and

.

3. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

John Doe

John Doe, Subscriber Assigned IP Address 75.180.17.170
Pro Se Movant

Date: 08/24/2025

**CERTIFICATE OF SERVICE**

I hereby certify that on 08/20/2025, I served a copy of this Motion for Leave to Proceed Anonymously upon Plaintiff's counsel by ~~FedEx~~ Tracking Number:
UPS    1Z 9V8 479 03 2030 8845

John Doe

John Doe, Subscriber Assigned IP Address 75.180.17.170

**UNITED STATES DISTRICT COURT**
Western District of Texas

Ansys, Inc
Plaintiff,
v.
John Doe, Subscriber Assigned IP Address 75.180.17.170,
Movant.

Civil Action No.6:25-cv-00292-ADA-DTG

## MOTION FOR LEAVE TO PROCEED ANONYMOUSLY

Movant, identified in the subpoena as the subscriber assigned IP address 75.180.17.170, respectfully requests leave of Court to proceed anonymously in this matter. In support, Movant states as follows:

### I. BACKGROUND

1. Plaintiff issued a subpoena to Movant's internet service provider seeking to disclose Movant's personally identifying information.
2. Movant has filed a Motion to Quash Subpoena on the grounds of misidentification, undue burden, and irrelevance.
3. Movant is not the alleged infringer. At the time of the alleged activity, the internet service was being used by a tenant who has since vacated the property. Movant resides in another state and had no involvement in the alleged conduct.

### II. LEGAL BASIS FOR ANONYMITY

4. Courts recognize that the presumption of open judicial proceedings may be outweighed by compelling privacy interests, particularly where disclosure of a party's identity would result in undue harm, embarrassment, or misidentification.
5. Here, public disclosure of Movant's name would not aid the adjudication of Plaintiff's claims, but it would unfairly associate Movant with alleged unlawful downloading activity in which Movant played no role.
6. Proceeding anonymously as "John Doe, Subscriber Assigned IP Address 75.180.17.170" will protect Movant's privacy and prevent wrongful identification, while causing no prejudice to Plaintiff.

### III. RELIEF REQUESTED

For these reasons, Movant respectfully requests that the Court:

1. Grant Movant leave to proceed anonymously as "John Doe, Subscriber Assigned IP Address 75.180.17.170" in this matter; and
2. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

John Doe

John Doe, Subscriber Assigned IP Address 75.180.17.170
Pro Se Movant

Date: 08/20/2025

**CERTIFICATE OF SERVICE**

I hereby certify that on 08/24/2025, I served a copy of this Motion to Quash Subpoena and to Proceed
Anonymously upon Plaintiff's counsel by ~~FedEx~~ Tracking Number: 1 z  9 V 9  4 79 0 3 2030  8845
UPS

John Doe

John Doe, Subscriber Assigned IP Address 75.180.17.170

**DECLARATION OF JOHN DOE, SUBSCRIBER ASSIGNED IP ADDRESS 75.180.17.170,**

IN SUPPORT OF MOTION TO QUASH SUBPOENA

I, John Doe, Subscriber Assigned IP Address 75.180.17.170, declare as follows:

1. I am the individual identified by the subpoena served on my internet service provider as the subscriber of IP address 75.180.17.170. I submit this declaration in support of my Motion to Quash Subpoena.
2. Although the internet account was in my name, I am not the person who engaged in the alleged downloading activity.
3. At the time of the alleged conduct, the internet service was installed at a rental property that I own. The property was occupied by a tenant who had access to and used the internet service. That tenant has since vacated the property.
4. I reside in a different state from the rental property and had no access to, knowledge of, or involvement in the alleged activity.
5. I do not possess any relevant information beyond what my internet service provider already maintains.
6. I am not the infringer. Requiring disclosure of my personal identifying information would result in misidentification, undue burden, and harm to an innocent subscriber.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 08/20/2025.

John Doe

John Doe
Subscriber Assigned IP Address 75.180.17.170



EXHIBIT – 1A – Subpoena

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Western District of Texas  ▼

| | |
|---|---|
| Ansys, Inc. | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.    6:25-cv-00292-ADA-DTG |
| Does 1 through 323 | ) |
| | )    (If the action is pending in another district, state where: |
| *Defendant* | )                                                      ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Charter Communications, Inc., through its registered agent, Corporation Service Company dba CSC - Lawyers Inc., 211 E. 7th Street, Ste. 620, Austin, TX 78701-3218

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: The names, addresses, email addresses and telephone numbers of the alleged infringers of copyrighted material who downloaded Ansys software under the IP addresses listed in the attached Exhibit A.  See also attached the Complaint in the proceeding (Exhibit B), Motion for Leave to Serve Subpoena ("Motion") (Exhibit C), and Order granting Motion (Exhibit D)

| Place: DANIELS & TREDENNICK PLLC<br>6363 Woodway Dr., Ste. 700<br>Houston, TX 77057 | Date and Time:<br><br>08/04/2025 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: ___07/21/2025___

|  CLERK OF COURT  | |
|---|---|
| | OR |
| | /s/ John F. Luman |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     ANSYS, INC.
_____ , who issues or requests this subpoena, are:
John F. Luman III, 6363 Woodway Dr., Ste. 700, Houston, TX 77057, Luman@DTLawyers.com, 713.917.0024

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  6:25-cv-00292-ADA-DTG

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# Exhibit A

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| ANSYS, INC. | § | |
| | § | **Cause No. 6:25-cv-292** |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| DOES 1 THROUGH 323, | § | |
| | § | **JURY TRIAL DEMANDED** |
| Defendants. | § | |

**COMPLAINT**

Plaintiff, ANSYS, Inc. ("Ansys"), brings this action against Does 1 through 323 (collectively "Defendants"), for copyright infringement and violation of the Digital Millennium Copyright Act's ("DMCA") anti-circumvention prohibitions, and shows the following:

**INTRODUCTION**

1. This is a civil action seeking damages and injunctive relief arising out of the violation of Ansys' intellectual property rights by Defendants, currently known only by an Internet Protocol address ("IP address").

2. Ansys is a global leader in engineering simulation software. With its portfolio of engineering simulation software, Ansys helps its customers solve complex design challenges and engineer products. Ansys provides services in a wide range of industries, including aerospace and defense, automotive, construction, consumer goods, and energy.

3. Ansys' flagship products include Ansys Electronics Enterprise, Ansys Fluent, and Ansys Mechanical software programs (collectively with all other Ansys software products, "Ansys Software"), which are protected by U.S. Copyright Registrations. *See* Exhibits 1-15. Ansys

1

# Exhibit B

| Number of IP | 82 |
|---|---|
| Ip with > 1 Events | 82 |
| Egress IP Org | (Multiple Items) |
| Company Domain | All |
| User Email Address | All |
| Event Date Detail (Localiz All | |

| Egress IP | Count of Hostname | Distinct Count of Event: Event ID | Case 5 - Doe Number |
|---|---|---|---|
| 75.83.194.59 | 213 | 213 | 84 |
| 173.94.105.0 | 41 | 41 | 85 |
| 76.36.225.101 | 39 | 39 | 86 |
| 172.114.129.165 | 37 | 37 | 87 |
| 75.82.193.96 | 28 | 28 | 88 |
| 104.32.181.239 | 26 | 26 | 89 |
| 76.168.221.91 | 26 | 26 | 90 |
| 72.45.218.227 | 25 | 25 | 91 |
| 70.121.44.197 | 25 | 25 | 92 |
| 98.144.66.239 | 23 | 23 | 93 |
| 107.11.149.154 | 15 | 15 | 94 |
| 72.134.110.80 | 15 | 15 | 95 |
| 47.232.161.235 | 14 | 14 | 96 |
| 70.95.83.250 | 13 | 13 | 97 |
| 24.213.201.201 | 12 | 12 | 98 |
| 71.47.205.65 | 10 | 10 | 99 |
| 104.33.75.49 | 10 | 10 | 100 |
| 24.175.247.127 | 10 | 10 | 101 |
| 104.33.68.101 | 9 | 9 | 102 |
| 74.70.107.127 | 6 | 6 | 103 |
| 71.67.105.24 | 5 | 5 | 104 |
| 23.242.187.40 | 5 | 5 | 105 |
| 24.59.240.252 | 5 | 5 | 106 |
| 72.188.99.41 | 5 | 5 | 107 |
| 76.87.98.62 | 5 | 5 | 108 |
| 24.31.246.92 | 5 | 5 | 109 |
| 98.28.226.159 | 5 | 5 | 110 |
| 23.243.168.193 | 5 | 5 | 111 |
| 47.229.167.172 | 5 | 5 | 112 |
| 173.90.96.170 | 5 | 5 | 113 |
| 142.196.237.31 | 5 | 5 | 114 |
| 107.146.13.22 | 5 | 5 | 115 |
| 172.118.149.171 | 5 | 5 | 116 |
| 75.180.17.170 | 5 | 5 | 117 |
| 173.91.130.186 | 5 | 5 | 118 |
| 173.174.101.175 | 5 | 5 | 119 |
| 76.175.141.244 | 5 | 5 | 120 |
| 76.171.246.46 | 5 | 5 | 121 |
| 76.32.206.156 | 5 | 5 | 122 |

| | | | |
|---|---|---|---|
| 172.248.62.241 | 5 | 5 | 123 |
| 172.222.141.29 | 5 | 5 | 124 |
| 67.10.56.255 | 5 | 5 | 125 |
| 67.242.80.213 | 5 | 5 | 126 |
| 35.150.58.20 | 5 | 5 | 127 |
| 45.47.230.68 | 5 | 5 | 128 |
| 47.38.189.65 | 5 | 5 | 129 |
| 98.26.36.89 | 4 | 4 | 130 |
| 76.37.136.21 | 4 | 4 | 131 |
| 104.172.235.117 | 4 | 4 | 132 |
| 75.80.128.115 | 4 | 4 | 133 |
| 173.94.40.9 | 4 | 4 | 134 |
| 68.119.134.104 | 4 | 4 | 135 |
| 35.150.27.143 | 3 | 3 | 136 |
| 98.149.210.227 | 3 | 3 | 137 |
| 98.121.19.70 | 3 | 3 | 138 |
| 16.98.93.143 | 3 | 3 | 139 |
| 47.7.62.95 | 3 | 3 | 140 |
| 72.131.12.220 | 3 | 3 | 141 |
| 104.175.126.174 | 3 | 3 | 142 |
| 174.99.27.230 | 3 | 3 | 143 |
| 98.149.116.47 | 3 | 3 | 144 |
| 35.146.30.176 | 3 | 3 | 145 |
| 172.88.18.89 | 3 | 3 | 146 |
| 47.41.63.179 | 3 | 3 | 147 |
| 68.173.71.212 | 3 | 3 | 148 |
| 45.49.135.190 | 2 | 2 | 149 |
| 70.115.151.206 | 2 | 2 | 150 |
| 107.185.205.76 | 2 | 2 | 151 |
| 104.174.141.181 | 2 | 2 | 152 |
| 71.69.150.182 | 2 | 2 | 153 |
| 107.184.11.70 | 2 | 2 | 154 |
| 76.37.222.125 | 2 | 2 | 155 |
| 72.225.34.63 | 2 | 2 | 156 |
| 96.58.193.210 | 2 | 2 | 157 |
| 76.32.207.140 | 2 | 2 | 158 |
| 172.73.65.13 | 2 | 2 | 159 |
| 68.174.146.65 | 2 | 2 | 160 |
| 23.243.212.69 | 2 | 2 | 161 |
| 76.36.77.87 | 2 | 2 | 162 |
| 174.85.86.47 | 2 | 2 | 163 |
| 24.178.41.175 | 2 | 2 | 164 |
| 75.82.246.136 | 2 | 2 | 165 |
| **Grand Total** | **824** | **824** | |

Electronics Enterprise is a comprehensive platform for simulating various electrical components, devices, and systems and includes several simulation solutions including Ansys Electronics Premium Maxwell ("Ansys Maxwell"), Ansys Electronics Premium HFSS ("Ansys HFSS"), Ansys Electronics Premium SIwave ("Ansys SIwave"), among others. Ansys CFD Enterprise software is the industry leading fluid simulation software known for its advanced physics modeling capabilities and accuracy. Ansys Mechanical Enterprise software is a best-in-class finite element solver with structural, thermal, acoustic, and piezoelectric simulation capabilities.

4.    Ansys licenses its highly valuable Ansys Software to its customers. Customers may purchase single-use licenses or multi-user licenses. Ansys prevents unauthorized access of the Ansys Software through the use of technological measures. Ansys' license agreement, which all users see on their computer screens and to which all users must agree to in order to use the Ansys Software, states the Ansys Software may collect information to determine if modifications to certain code files have been made or if there is suspected or confirmed unauthorized access to or use of the Ansys Software.

5.    Despite the fact that Ansys Software includes technological measures to control access to it, and users are put on notice of the same by agreeing to the license agreement, Defendants obtained, installed on their computer systems, and used pirated Ansys Software. Defendants committed willful copyright infringement and DMCA violations when they downloaded pirated Ansys Software, circumvented Ansys' technological measures protecting the software, and used the unlicensed Ansys Software to solve complex design problems and to engineer products and solutions for themselves, their employers, and others.

6.    Although Defendants attempted to hide their theft by anonymously infringing Ansys Software, Defendants' Internet Service Provider ("ISP") can identify Defendants through

2

his or her IP address. Ansys will seek the identity of Defendants from the ISP. Once known to Ansys, Ansys will amend this Complaint to identify the infringing individuals.

## THE PARTIES

7.    Ansys is a Delaware corporation with a principal place of business located at Southpointe, 2600 Ansys Drive, Canonsburg, Pennsylvania, 15317. Ansys does business in this district and throughout the State of Texas.

8.    Ansys is unaware of the true names and capabilities of Does 1 through 323 and therefore sues these Defendants by such fictitious names. Ansys will seek leave of Court to amend this Complaint to state the true names and capacities of Defendants sued as Does when ascertained. Ansys is informed and believes and thereby alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this Complaint, and that Ansys' damages were proximately caused by their conduct.

## JURISDICTION AND VENUE

9.    Ansys brings its copyright infringement claims under 17 U.S.C. §§501 *et seq.* and its DMCA violation claim under 17 U.S.C. §§1201 *et seq.* This Court has original and exclusive jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.    Venue (and personal jurisdiction) in this District is proper under 28 U.S.C. §§ 1391(b)-(c) and/or 28 U.S.C. § 1400(a). Although the true identity of the Defendants is unknown to Ansys at this time, on information and belief, the Defendants may be found in this District and/or a substantial part of the acts of infringement complained of herein may have occurred in this District and/or each Defendant, without consent or permission of the copyright owner, Ansys, may have purposefully availed themselves of the services of an ISP located in this District to illegally download from the Internet and/or use copyrighted works owned by Ansys.

3

## BACKGROUND FACTS

### A. How Ansys Software is Legally Purchased and Operated

11.     Ansys generally sells perpetual licenses, annual leases, and maintenance subscriptions to Ansys Software. As long as a maintenance subscription, or the annual lease, is maintained, the customer has access to and may download updates and subsequent versions of the Ansys Software, as well as associated user documentation.

12.     To purchase a license to Ansys Software, a customer must issue a purchase order to Ansys or to an authorized reseller or sign an agreement. To download Ansys Software from Ansys, a customer must log in through their Ansys account. Once Ansys has obtained a signed contract or payment from the customer, the customer can log in to Ansys' customer portal and download the executable files for the licensed Ansys Software.

13.     Ansys also allows students to obtain a license to Ansys Software for free. The student version, however, limits the functionality of the Ansys Software. Student licenses of Ansys Software are obtained directly from Ansys via its website. Students may download the student version of various Ansys products without establishing an Ansys account or providing any information to Ansys.

14.     Once Ansys has obtained a signed contract or payment from the customer, in a separate email, or through a download from the customer portal, Ansys sends the customer a license key for the customer's copy of the purchased Ansys Software. The license key is readable by the licensing tools that are integrated directly into the Ansys Software and facilitates Ansys Software license compliance for its products.

4

15.     When a user installs an Ansys Software program, and specifically when the user runs the executable files associated with the setup of an Ansys Software program, a local copy of the Ansys Software (the usable, object code version thereof) is created on the user's machine.

16.     When the customer initiates an authorized Ansys Software program, the licensing tools are activated and inquire as to whether that copy of the Ansys Software program is associated with a valid license. If the customer has a valid license, the licensing tools will access and verify the license key. Once the license key is verified, the Ansys Software is enabled for the customer's use. If there is no valid license key, the Software will not start.

17.     Ansys regularly improves, updates, and adds features when it releases new versions of its Ansys Software. Ansys releases at least two major updates of its Ansys Software products and associated user documentation per year, as well as new products developed in-house, acquired through mergers and acquisitions, or OEM'ed (original equipment manufacturer) from third parties. Ansys also releases intermediary updates, or "subreleases," between the main releases of its Ansys Software.

B. **Piracy of Ansys Software**

18.     Piracy of software occurs when users access software for which they have not purchased a valid license. The ease of digital replication of software lends itself to illegal copying of software, where users may make multiple copies of a software program, and then distribute the copies to users who have not made a legal purchase of a license to the software (*i.e.*, either distributing copies of the software for free or selling the copies of the software at deeply discounted prices).

19.     To reduce the use of illegally copied software, software providers, including Ansys, implement license verification technology that will prevent the software from functioning unless

5

the user has legally purchased a license. This license verification technology may be a software mechanism or a physical mechanism attached to a single computer. The license verification technology may be in the form of either a license key (*i.e.*, a series of numbers and letters sometimes stored in a computer file) that a user types in or that the software reads from a file during the software installation process, or a hardwire device, where the software will only operate correctly when the hardware device is attached to the computer executing the software. The license verification technology and the license key are provided by the software provider to the buyer when the software is purchased legally. Users who have not made a legitimate purchase of a software license will not have access to the license key or hardware device provided by the software provider, and therefore the software will not function properly.

20.    Software hackers reverse engineer the technological measures used to control access to the software and then provide processes and utilities to bypass the license verification technology thus allowing unauthorized use of the software. The hackers' processes and utilities mimic the license verification technology (*e.g.*, keys, hardware devices, *etc.*) and allow pirated software to function as fully as legally purchased software. Software utilities that mimic the license verification technology are often referred to as "cracked" licenses. Software hackers may also create hacked versions of the software such that a license is not needed during installation.

21.    Sophisticated websites exist where illegally obtained software, the software utilities that mimic the license verification technology, and hacked versions of the software may be downloaded and installed by those who do not want to pay for properly licensed software. Each hacked version of the software represents a lost sale and/or license for the company that owns the software and for resellers of the software (who may provide hardware installation and support, and software configuration, customization, and maintenance). A study by the Business Software

6

Alliance reported that properly licensed software has a positive impact on national economic activity that is more than three times the impact of pirated software.[1]

22.    Software that has been hacked or modified to use a cracked license may also contain malware that can damage computer systems, and/or infiltrate the computer network and the data on the network.  In a study conducted by the Technology Policy Institute, the more times users visited piracy sites, the more likely their machines were infected with malware.[2]  Software that has been hacked also may not operate properly, negatively impacting the reputation of the software company that now has no oversight or control over the quality of the hacked versions of its software in use or the products produced by that software.

C. **Piracy Detection and Reporting Security Software**

23.    Piracy Detection and Reporting Security Software ("PDRSS") exists to identify instances of pirated software in use and provides the identity and location of organizations utilizing the pirated software to the software providers.  Identification of pirated software allows the software providers to take legal action against intentional software piracy, notifying organizations and individuals of the illegal use of the software (and the potential malware problems that can accompany pirated software), and sell valid software licenses in the place of the previously illegally obtained software programs to recoup lost sale. Ansys identifies pirated software in use through PDRSS which, along with the license verification technology, is a component of the technological measures used to control access to the software.

24.    PDRSS also identifies the means by which software hackers have thwarted the license verification technology (*i.e.*, the above-mentioned cracked license) for a particular software program.  For example, PDRSS may accomplish this by downloading pirated software from the

---

[1] https://www.bsa.org/files/reports/2013softwarevaluestudy_en.pdf
[2] https://techpolicyinstitute.org/publications/privacy-andsecurity/piracy-and-malware-theres-no-free-lunch/

above-mentioned websites and determining how the software hackers were able to bypass the license verification technology. Once the software hackers' methods are identified, Ansys can map out a plan for PDRSS to determine when pirated software is in use. This includes identifying when the pirated software is using a cracked license.

25.     The plan may include a variety of means for identifying software piracy. The plan may also include defining software use patterns that are indicative of software piracy. PDRSS can determine various patterns that are indicative of pirated software use, and thresholds at which the PDRSS software should begin to gather and report data on the computer using the pirated software.

26.     Software providers, such as Ansys, embed the PDRSS within their software, validate that the patterns and thresholds will trigger on pirated software (and will not trigger on validly purchased software), and then release the software.

27.     The serial number of the license is a unique identifier and helps in identifying unauthorized versions of the software. Multiple versions of software using the same serial number are indicative of unauthorized versions of software using a cracked license. In some cases, illegal license generators create license files having serial numbers that are inconsistent with the serial numbers generated by the software providers, which is also indicative of a cracked license.

28.     The IP address is a unique address used to identify computers on the global network of the internet. An IP address is the numerical sequence by which a computer on the public internet can identify another computer on the public internet.   IP addresses are in the form: **xxx.xxx.xxx.xxx** where each xxx must be a number between $0-255$.

29.     A Media Access Control ("MAC") address is a unique hardware identifier assigned to network interfaces. Every device that makes a physical connection to the network, where it is an Ethernet card or port or wireless connection, has a unique and specific address.  Thus, a

8

computer with both an Ethernet connection and a wireless connection has two unique MAC addresses. A MAC address is a series of numbers and letters. When a network device is manufactured, it is assigned a MAC address at the factory. The first six digits of a MAC address represent the device manufacturer, which can be looked up on the Internet.

30.    Data reported from the embedded PDRSS generates a report that identifies the software that has been pirated and the organizations utilizing the pirated software, such as the version of the software being used, the license serial number, the IP address of the organization where the pirated software is running, the identifying name of the computer, and a MAC address. Through the technological measures used to control access to the software, Ansys collects this identifying information to determine when pirated and unlicensed versions of its Ansys software are being utilized.

31.    Ansys collects a large volume of data through the use of PDRSS that must be reviewed, analyzed, and investigated to determine and confirm the source of the infringement. Through review, analysis, and investigation of the PDRSS data, Ansys discovered that Defendants used unlicensed and pirated Ansys Software, which included a list of specific IP addresses for each unauthorized installation.

32.    Ansys cannot independently identify the user that installed and used the unlicensed software from this information. However, with an Internet Service Provider ("ISP") it is possible to determine an individual subscriber from an IP address.

33.    When a subscriber accesses the Internet through its ISP, it is automatically assigned an IP address, which is a unique numerical identifier. The IP address assigned to a particular subscriber is typically tracked by the ISP, which retains "user logs" of information for a certain period of time. The ISP can then identify users from their logs by reference to their IP address.

9

34.    ISPs are assigned blocks of IP addresses. The blocks that are assigned to specific ISPs are publicly available on Internet databases. Accordingly, once an IP address is known it is fairly simple to determine which ISP assigned the IP address.

35.    Pirated versions of the Ansys software cannot be downloaded and installed accidentally or innocently. Rather, downloading and installing pirated Ansys Software is a multi-step process that requires willful and deliberate action to circumvent technological measures that are put in place to deter and detect such conduct.

36.    As a direct and proximate result of Defendants' acts of infringement, Ansys has suffered damages and will continue to suffer damages through loss of substantial licensing revenue, and diminishment of the exclusivity, inherent value, and marketability of the Ansys Software.

37.    As a direct and proximate result of Defendants' acts of infringement, Ansys has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law.

### THE INFRINGED COPYRIGHTS

38.    Ansys Software is protected by numerous U.S. copyright registrations, including those identified in the following paragraphs 39 to 53 ("Ansys Copyrighted Software").

39.    Ansys owns U.S. Copyright Registration No. TX0009429877, registered on September 11, 2024, to ANSYS, Inc. and titled "Ansys 2024 R2." Attached as Exhibit 1 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009429877.

40.    Ansys owns U.S. Copyright Registration No. TX0009429933, registered on September 11, 2024, to ANSYS, Inc. and titled "Ansys Electromagnetics Suite 2024 R2."

Attached as Exhibit 2 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009429933.

41.     Ansys owns U.S. Copyright Registration No. TX0009377352, registered on March 3, 2024, to ANSYS, Inc. and titled "Ansys 2024 R1." Attached as Exhibit 3 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009377352.

42.     Ansys owns U.S. Copyright Registration No. TX0009377393, registered on March 26, 2024, to ANSYS, Inc. and titled "Ansys Electromagnetics Suite 2024 R1." Attached as Exhibit 4 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009377393.

43.     Ansys owns U.S. Copyright Registration No. TX0009279546, registered on April 12, 2023, to ANSYS, Inc. and titled "Ansys 2023 R1." Attached as Exhibit 5 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009279546.

44.     Ansys owns U.S. Copyright Registration No. TX0009308524, registered on August 4, 2023, to ANSYS, Inc. and titled "Ansys 2023 R2." Attached as Exhibit 6 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009308524.

45.     Ansys owns U.S. Copyright Registration No. TX0009325087, registered on August 4, 2023, to ANSYS, Inc. and titled "Ansys Electromagnetics Suite 2023 R2." Attached as Exhibit 7 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009325087.

46.     Ansys owns U.S. Copyright Registration No. TX0009104363, registered on March 24, 2022, to ANSYS, Inc. and titled "Ansys 2022 R1." Attached as Exhibit 8 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009104363.

47.    Ansys owns U.S. Copyright Registration No. TX0009175204, registered on September 7, 2022, to ANSYS, Inc. and titled "Ansys 2022 R2." Attached as Exhibit 9 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009175204.

48.    Ansys owns U.S. Copyright Registration No. TX0009104430, registered on March 24, 2022, to ANSYS, Inc. and titled "Ansys Electromagnetics Suite 2022 R1." Attached as Exhibit 10 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009104430.

49.    Ansys owns U.S. Copyright Registration No. TX0009179826, registered on September 7, 2022, to ANSYS, Inc. and titled "Ansys Electromagnetics Suite 2022 R2." Attached as Exhibit 11 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009179826.

50.    Ansys owns U.S. Copyright Registration No. TX0009005702, registered on March 23, 2021, to ANSYS, Inc. and titled "Ansys 2021 R1." Attached as Exhibit 12 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009005702.

51.    Ansys owns U.S. Copyright Registration No. TX0009009247, registered on August 20, 2021, to ANSYS, Inc. and titled "Ansys 2021 R2." Attached as Exhibit 13 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009009247.

52.    Ansys owns U.S. Copyright Registration No. TX0009005711, registered on March 23, 2021, to ANSYS, Inc. and titled "Ansys Electromagnetics Suite 2021 R1." Attached as Exhibit 14 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg. No. TX0009005711.

12

53.    Ansys owns U.S. Copyright Registration No. TX0009002716, registered on August

20, 2021, to ANSYS, Inc. and titled "Ansys Electromagnetics Suite 2021 R2." Attached as Exhibit

15 is a true and correct printout from the U.S. Copyright Catalog for Ansys' U.S. Copyright Reg.

No. TX0009002716.

## COUNT 1
### (Infringement of Copyrights Against Does 1-323)

54.    Ansys incorporates the previous paragraphs of this Complaint by reference and

realleges them as originally and fully set forth here.

55.    Defendants have knowingly and intentionally used, and continue to use, pirated

copies of Ansys Copyrighted Software. In doing so, Defendants have willfully infringed Ansys'

copyrights and will continue to do so unless enjoined by this Court.

56.    As a direct and proximate result of Defendants' infringing acts, Ansys has suffered

and will continue to suffer injury and damages, including loss of substantial licensing revenue and

diminishment of the exclusivity, inherent value, and marketability of Ansys Copyrighted Software.

Unless such acts and practices are enjoined by the Court, Ansys will continue to be injured in its

business and property rights and will suffer and continue to suffer injury and damages, which are

causing irreparable harm and for which Ansys is entitled to relief.

57.    Accordingly, Defendants have violated 17 U.S.C. § 501 and this violation is willful.

58.    As a result of Defendants' infringement, Ansys is entitled to actual damages and

any additional profits of Defendants pursuant to 17 U.S.C. § 504(a)-(b) or statutory damages

pursuant to 17 U.S.C. § 504(c).

59.    Ansys is entitled to costs, including reasonable attorneys' fees, pursuant to 17

U.S.C. § 505.

60.     As a result of each Defendant's infringement of Ansys' copyrights and exclusive rights afforded it under the copyrights, Ansys is also entitled to injunctive relief prohibiting each Defendant from further infringing Ansys' copyrights.

## COUNT 2
## (Violations of DMCA Against Does 1-323)

61.     Ansys incorporates the previous paragraphs of this Complaint by reference and realleges them as originally and full set forth here.

62.     Ansys uses technological measures to control access to and copying of its Ansys Software, and to prevent unauthorized access and unauthorized copying.

63.     On information and belief, Defendants defeated the technological measures used to control access to the software, which has allowed Defendants to access and copy the valuable Ansys Copyrighted Software without authorization.

64.     Defendants' conduct has caused, and unless enjoined will continue to cause, irreparable harm to Ansys, for example, through loss of substantial licensing revenue and diminishment of the exclusivity, inherent value, and marketability of Ansys Copyrighted Software.

65.     Accordingly, Defendants have violated 17 U.S.C. § 1201 and this violation is willful.

66.     As a result of Defendants' unlawful circumvention, Ansys is entitled to actual damages and any additional profits of Defendants pursuant to 17 U.S.C. § 1203(c)(2) or statutory damages pursuant to 17 U.S.C. § 1203(c)(3).

67.     Ansys is entitled to costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b).

## PRAYER FOR RELIEF

Ansys respectfully asks this Court to summon each Defendant to appear and answer this Complaint, and after being heard on the merits, grant judgment in favor of Ansys as follows as to each Defendant:

(a)   Find Defendant liable for copyright infringement of the Copyrighted Software;

(b)   Find Defendant's copyright infringement was willful and knowing;

(c)   Enter a preliminary and permanent injunction prohibiting Defendant, and its agents, servants, and employees, and all persons acting in concert with, or for them from continuing to reproduce, distribute, display, disseminate, transmit, make available for download, or otherwise use Ansys Copyrighted Software in any manner whatsoever appropriating or in violation of Ansys' copyrights;

(d)   Order Defendant and its agents, servants, and employees, and all persons acting in concert with, or for them to destroy all copies of Ansys Copyrighted Software that Defendant has used and/or downloaded onto any computer hard drive or server without Ansys' authorization and to destroy copies of that downloaded software transferred onto any physical medium or device in Defendant's possession, custody, or control;

(e)   Find Defendant liable for unlawful circumvention of technological measures used to control access to Ansys Copyrighted Software in violation of the DMCA;

(f)   Award Ansys its actual damages and Defendant's additional profits in an amount to be determined at trial;

(g)   Award Ansys statutory and other damages as provided under the Copyright Act and

the DMCA;

(h)    An accounting of the use and/or download by each Defendant of Ansys Copyrighted Software;

(i)    An accounting of any revenues or profits realized by or through each Defendant's use and/or download of Ansys Copyrighted Software;

(j)    Award Ansys prejudgment and post judgment interest;

(k)    Award Ansys costs, attorneys' fees, and expenses arising from this suit; and

(l)    Grant Ansys such other relief as this Court deems just and proper.

## JURY DEMAND

In accordance with FED. R. CIV. P. 38 and 39, Ansys asserts its rights under the Seventh Amendment to the United States Constitution and demands a trial by jury on all issues that may be so tried.

Dated: July 10, 2025                         Respectfully submitted,

DANIELS & TREDENNICK PLLC

*/s/ John F. Luman III*
John F. Luman III
Attorney-in-Charge
Texas State Bar No. 00794199
Heath A. Novosad
Texas State Bar No. 24037199
Mary Rodman Crawford Echols
Texas State Bar No. 24109766
DANIELS & TREDENNICK PLLC
6363 Woodway, Suite 700
Houston, Texas 77057
(713) 917-0024 – Telephone
(713) 917-0026 – Facsimile
luman@dtlawyers.com
Heath@dtlawyers.com
Crawford@dtlawyers.com

**COUNSEL FOR ANSYS, INC.**

JS 44 (Rev. 04/21)    Case 6:25-cv-00292-ADA-DTG    Document 14-1    Filed 07/10/25    Page 1 of 2

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ANSYS, INC. | DOES 1 THROUGH 323 |

| (b) County of Residence of First Listed Plaintiff    Out of State | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| DANIELS & TREDENNICK PLLC, 6363 Woodway Dr.,<br>Ste. 700, Houston, TX 77057 713.917.0024 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
    Plaintiff

☒ 3  Federal Question
    *(U.S. Government Not a Party)*

☐ 2  U.S. Government
    Defendant

☐ 4  Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>  &amp; Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>  Student Loans<br>  (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>  of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>  Liability<br>☐ 320 Assault, Libel &amp;<br>  Slander<br>☐ 330 Federal Employers'<br>  Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>  Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>  Product Liability<br>☐ 360 Other Personal<br>  Injury<br>☐ 362 Personal Injury -<br>  Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>  Product Liability<br>☐ 367 Health Care/<br>  Pharmaceutical<br>  Personal Injury<br>  Product Liability<br>☐ 368 Asbestos Personal<br>  Injury Product<br>  Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>  Property Damage<br>☐ 385 Property Damage<br>  Product Liability | ☐ 625 Drug Related Seizure<br>  of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>  28 USC 157<br>**INTELLECTUAL<br>PROPERTY RIGHTS**<br>☒ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated<br>  New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets<br>  Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>  3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>  Corrupt Organizations<br>☐ 480 Consumer Credit<br>  (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer<br>  Protection Act<br>☐ 490 Cable/Sat TV |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease &amp; Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>  Accommodations<br>☐ 445 Amer. w/Disabilities -<br>  Employment<br>☐ 446 Amer. w/Disabilities -<br>  Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>  Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus &amp; Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>  Conditions of<br>  Confinement | **LABOR**<br>☐ 710 Fair Labor Standards<br>  Act<br>☐ 720 Labor/Management<br>  Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>  Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>  Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>  Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>  or Defendant)<br>☐ 871 IRS—Third Party<br>  26 USC 7609 | ☐ 850 Securities/Commodities/<br>  Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>  Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure<br>  Act/Review or Appeal of<br>  Agency Decision<br>☐ 950 Constitutionality of<br>  State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
  Proceeding

☐ 2 Removed from
  State Court

☐ 3 Remanded from
  Appellate Court

☐ 4 Reinstated or
  Reopened

☐ 5 Transferred from
  Another District
  *(specify)*

☐ 6 Multidistrict
  Litigation -
  Transfer

☐ 8 Multidistrict
  Litigation -
  Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
17 U.S.C. §§501 et seq.

Brief description of cause:
Copyright Infringement

| VII. REQUESTED IN<br>COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION<br>UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:    ☒ Yes    ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S)<br>IF ANY | *(See instructions):*    JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| July 10, 2025 | /s/ John F. Luman III |

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# Exhibit C

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| ANSYS, INC. | § | |
| | § | Cause No. 6:24-cv-00292 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| DOES 1 THROUGH 323, | § | |
| | § | JURY TRIAL DEMANDED |
| Defendants. | § | |

## EXPEDITED UNOPPOSED *EX PARTE* MOTION FOR LEAVE TO SERVE THIRD-PARTY SUBPOENAS PRIOR TO A RULE 26(F) CONFERENCE

Pursuant to FED. R. CIV. P. 26(d)(1), Ansys, Inc. ("Ansys"), moves for entry of an order granting it leave to serve third-party subpoenas on certain Internet Service Providers ("ISPs")[1] prior to a Rule 26(f) conference (the "Motion") and would respectfully show as follows:

### I.    INTRODUCTION

Ansys seeks an Order to compel discovery from the ISPs to determine the identities of the Doe Defendants in this case. Specifically, Ansys has learned that certain individuals violated its rights under the Copyright Act by downloading and using Ansys software products without permission. To protect Ansys' rights to and investment in its software, Ansys filed this action against individuals, whom Ansys identified as Does 1-323, until Ansys can determine their identities. Although Ansys has identified the Internet Protocol ("IP") addresses and/or accompanying network information associated with the Doe Defendants, Ansys has not yet determined their identities to name them in this action. The identifying information is within the

---

[1] The ISPs Ansys seeks to subpoena are Altice, AT&T, Charter Communications, Comcast, Cox, Frontier, T-Mobile, and Verizon.

possession of the ISPs, which assigned the IP addresses associated with these Doe Defendants. Without access to identifying information of these Doe Defendants, such as names and addresses, Ansys will not be able to move forward with this matter to protect its software from unauthorized use. As a result, Ansys respectfully requests the Court grant this Motion.

## II.    BACKGROUND

Ansys is the global leader in engineering simulation software, maintaining over 75 strategic sales locations and a network of partners worldwide. *See* Comp. at ¶ 2. Ansys maintains a portfolio of software products that solve complex design challenges and engineer products for customers in a wide variety of industries. *See id.* at ¶¶ 2-3. Ansys' flagship products include Ansys Fluent, Ansys Electronic Enterprise, and Ansys Mechanical software programs ("Ansys Software"), which are protected by U.S. Copyright Registrations. *Id.* at ¶3.

Ansys employs various anti-piracy measures in order to prevent unauthorized and unlicensed uses of its Ansys Software. One such measure is Ansys' incorporation of Piracy Detection and Reporting Security Software ("PDRSS") into the Ansys Software. *Id.* at ¶¶ 23-34. The PDRSS can detect the installation or use of unlicensed, illegal copies of the Ansys Software and collect data and information relating to the unlicensed use event. *Id.* The PDRSS then generates an infringement report containing information gathered regarding the unlicensed use event, including but not limited to the IP address of the computer used. *Id.*

An IP address is a unique numerical address assigned to an internet user by the user's internet service provider ("ISP"). *Id.* at ¶¶ 32-34. The IP address assigned to a particular subscriber is typically tracked by the ISP, which retains "user logs" of information for a certain period of time. *Id.* While the infringement report generally does not include any personal information from which Ansys can independently identify the users who installed the unlicensed Ansys Software,

2

*id.* at ¶ 32, the ISPs responsible for assigning specific IP addresses can identify the users that the specific IP addresses belong to from their user logs. *See id.* at ¶¶ 33-34.

Further, ISPs are assigned blocks of IP addresses, and the blocks assigned to specific ISPs are publicly available on internet databases. Accordingly, once an IP address is known it is fairly simple to determine which ISP assigned the IP address. *Id.* at ¶ 34. However, without the ISP's help, it is impossible to determine which IP address is associated with which subscriber. *See id.* at 31-34.

Using information provided by the PDRSS, Ansys has compiled a list of unauthorized installations of the Ansys Software, including a list of specific IP addresses for each unauthorized installation. Each IP address is associated with a currently unidentified Defendant in this suit. *Id.* Ansys then cross-referenced the list of IP addresses with the blocks assigned to specific ISPs to determine which ISPs it must subpoena.

As such, Ansys seeks leave to serve limited, immediate discovery on the ISPs so that Ansys may learn Defendants' identities, investigate Defendants' role in the infringement, and effectuate service on Defendants.

### III. ARGUMENT

#### A. Legal Standard Governing Expedited Discovery Requests to Identify an Anonymous Defendant

Generally, a party may not seek discovery before a Rule 26(f) conference unless authorized by a court order. Fed. R. Civ. P. 26(d)(1). District courts exercise considerable discretion in discovery matters, and this Court has adopted the "good-cause" standard to determine whether a party is entitled to expedited discovery. *See Malibu Media, LLC v. Doe,* No. SA-19-CV-00962-DAE, 2019 WL 4003086, at *1 (W.D. Tex. Aug. 23, 2019) (citations omitted). Under this standard, courts consider the record and the reasonableness of the request in light of all the surrounding

circumstances. *Id.* (citation omitted). "If a plaintiff seeks a subpoena to identify an anonymous Internet user, the court must also balance the need for disclosure against the defendant's expectation of privacy." *Id.* (internal quotation marks and citation omitted). Courts making this determination commonly consider the following factors: (1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's expectation of privacy. *Entm't v. Does 1-1, 427*, No. 2:11-cv-269, 2012 WL 12897376, at *2 (E.D. Tex. Mar. 16, 2012) (citing *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004))..

### B. Good Cause Exists for this Court to Grant Ansys' Motion for Leave to Serve Its Subpoena

#### 1. Ansys' Complaint Makes a Prima Facie Claim of Copyright Infringement

The first factor of the good-cause test is whether the plaintiff has made "a concrete showing of a prima facie claim of actionable harm." *Strike 3 Holdings, LLC, v. Doe*, No. 1:21-cv-00928-RP, Dkt. 5 at *2 (W.D. Tex. Oct. 29, 2021). To make a prima facie claim of copyright infringement, Ansys must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Ansys' Complaint accomplishes this, stating (1) "Ansys' flagship products include Ansys Electronics Enterprise, Ansys Fluent, and Ansys Mechanical software programs ("Ansys Software"), which are protected by U.S. Copyright Registration", *see* Compl. at ¶ 3; and (2) "Defendants obtained, installed on their computer systems, and used pirated Ansys Software. Defendants committed willful copyright infringement and DMCA violations when they downloaded pirated Ansys Software, circumvented Ansys' technological measures protecting the software, and used the unlicensed Ansys Software . . . ." *See Id.* at ¶ 5.

4

Ansys owns valid copyrights in the Ansys Software, which are registered with the United States Copyright Office. *See* 17 U.S.C. § 410(c); Compl. at ¶¶ 3, 39-53. Ansys has also made a plausible prima facie showing of "copying." "The word 'copying' is shorthand for infringing of any of the copyright owner's five exclusive rights' described in § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Ansys' Complaint alleges that Defendants downloaded pirated copies of the Ansys Software, circumvented Ansys' technological measures protecting the Ansys Software, and used pirated copies of the Ansys Software. *See* 17 U.S.C. § 106(1); *see also* Complaint at ¶ 5. Thus, Ansys satisfies the first factor of the good cause test.

### 2. Ansys Seeks Only the Limited and Specific Information Necessary to Serve Doe Defendants

The second factor of the good-cause test deals with the specificity of the discovery request. Ansys seeks to subpoena from the ISPs the name, address, email address, and phone number of each Defendant associated with an identifiable IP address. *See John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012) (permitting concrete and narrow subpoena to obtain subscriber information). "Plaintiff's discovery request is sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court." *FUNimation Entm't v. Does 1 - 1,427*, No. 11-269, 2012 WL 12897376, at *2 (E.D. Tex. Mar. 16, 2012); *see Combat Zone Corp. v. John/Jane Does 1-5*, No. 12-4005-M, 2012 WL 5289736, at *1 (N.D. Tex. Oct. 26, 2012) ("The information sought is specific."); *Combat Zone Corp. v. John/Jane Does 1-13*, No. 12-3927-B, 2013 WL 230382, at *5 (N.D. Tex. Jan. 22, 2013) (finding a subpoena limited to identifying an infringer "satisfies the second factor"). "The identifying information would enable Plaintiff to serve process on Defendants." *FUNimation Entm't*, No. 11-269, 2012 WL 12897376 at *2. Thus, the second factor weighs in Ansys' favor.

5

### 3. There Are No Alternative Means to Obtain Defendants' Identities

The third factor is the absence of alternative means to obtain the information sought in the proposed subpoena. The only hint Ansys currently has as to Defendants' identities is their IP addresses, provided by Ansys' PDRSS infringement reports. As discussed, Ansys cannot independently identify an internet user by their IP address. Rather, only the ISP who assigned the IP address can identify the user by referencing its user logs. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 299 (4th Cir. 2018) (noting "only the ISP can match the IP address to the subscriber's identity"); *Studio W. Prods. Inc v. Does 1-237*, No. CV 12-3690, 2013 WL 12158061 at *2 ("ISPs can identify each Defendant by name through the IP address by reviewing its subscriber activity logs."). On March 11, 2025, this Court entered an order in a substantially similar case finding that Ansys met its burden to show good cause existed for limited expedited discovery. *Ansys, Inc. v. Does 1 Through 359*, 6:24-cv-00363-ADA, Dkt. 6 (W.D. Tex. March 11, 2025).

### 4. The Subpoenaed Information Is Necessary to Advance Ansys' Claim

The fourth factor of the good cause test is the existence of a "central need" for the subpoenaed information to advance the plaintiff's claim. When a plaintiff can only identify a defendant by their IP address and seeks to subpoena the defendant's identity from the ISP, "[Plaintiff's] need for the subpoenaed information is significant. Without it, [Plaintiff] would be unable to serve process and advance its infringement claim." *Strike 3 Holdings, LLC, v. Doe*, No. 1:21-cv-00928-RP, Dkt. 5 at *4 (W.D. Tex. Oct. 29, 2021). "Furthermore, a subpoena is appropriate because ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data. Once that information is erased, Plaintiff will have no ability to identify the Doe Defendants and will be unable to advance its claim." *Studio W.*

6

*Prods., Inc*, No. 12-3690, 2013 WL 12158061 at *2. Given that Ansys cannot serve process and advance its copyright infringement claims against Defendants unless it obtains their identities from the ISP, the fourth factor weighs in Ansys' favor.

### 5. Ansys' Interest in Protecting Its Copyrighted Software Substantially Outweighs Defendant's Minimum Privacy Interest

The fifth factor concerns the internet user's expectation of privacy. An ISP subscriber has a "minimal expectation of privacy in the sharing of copyrighted material." *Strike 3 Holdings, LLC, v. Doe*, No. 1:21-cv-00928-RP, Dkt. 5 at *4 (W.D. Tex. Oct. 29, 2021) (quoting *Malibu Media, LLC v. John Does 1-11*, No. 12 CIV. 3810 ER, 2013 WL 3732839, at *6). Furthermore, a Defendant's First Amendment privacy interests are "exceedingly small" where the speech is the alleged infringement of copyrights, and any First Amendment right to remain anonymous is outweighed by a plaintiff's right to use judicial process to pursue meritorious copyright infringement claims. *Id.* Accordingly, the fifth factor weighs in Ansys' favor.

In sum, all five factors weigh in favor of permitting Ansys to serve a third-party subpoena before the Rule 26(f) conference.

## IV.    CONCLUSION

For the foregoing reasons, Ansys respectfully requests this Court grant it leave to issue a Rule 45 subpoena to the ISPs.

Dated: July 10, 2025                    Respectfully submitted,

                                        DANIELS & TREDENNICK PLLC

                                        */s/ John F. Luman III*
                                        John F. Luman III
                                        Attorney-in-Charge
                                        Texas State Bar No. 00794199
                                        Heath A. Novosad
                                        Texas State Bar No. 24037199
                                        Mary Rodman Crawford Echols

7

Texas State Bar No. 24109766
DANIELS & TREDENNICK PLLC
6363 Woodway, Suite 700
Houston, Texas 77057
(713) 917-0024 – Telephone
(713) 917-0026 – Facsimile
Luman@dtlawyers.com
Heath@dtlawyers.com
Crawford@dtlawyers.com

**COUNSEL FOR ANSYS, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2025, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ John F. Luman III*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| ANSYS, INC. | § | |
|      Plaintiff, | § | Cause No. 6:25-cv-00292 |
| v. | § | |
| DOES 1 THROUGH 323, | § | **JURY TRIAL DEMANDED** |
|      Defendants. | § | |

**ORDER**

Before the Court is Plaintiff's *Ex Parte* Motion for Leave to Serve Third-Party Subpoenas

Prior to a Rule 26(f) Conference. ECF No. 3. For the reasons set forth below, Plaintiff's Motion

for Leave to Serve Third-Party Subpoenas is **GRANTED**.

**I.    BACKGROUND**

On July 10, 2025, Plaintiff ANSYS, Inc. ("Ansys") filed a complaint against Doe

Defendants 1 through 323 ("Defendants"), alleging copyright infringement and violations of

the Digital Millenium Copyright Act (the "DMCA"). ECF No. 1. Plaintiff is a global leader in

engineering simulation software that licenses its software programs (the "Ansys Software") to

its customers. *Id.* at ¶¶ 2–4. The Ansys Software is protected by numerous U.S. copyright

registrations. *Id.* at ¶¶ 38–53. Plaintiff alleges that Defendants obtained, installed on their

computer systems, and used pirated Ansys Software, thereby committing willful copyright

infringement and DMCA violations. *Id.* at ¶¶ 5, 54–67. Defendants have been identified only by

the Internet Protocol address ("IP address") through which the copyrighted works were

allegedly downloaded. *Id.* at ¶¶ 23–34.

Plaintiff has filed a motion for leave to serve third-party subpoenas on internet service

providers (ISPs) to obtain the names, addresses, email addresses, and phone numbers

corresponding to the IP addresses prior to a Rule 26(f) conference. ECF No. 3 at 5. As

Defendants have not yet been identified by name, no opposition was filed.

1

## II.    LEGAL STANDARD

Generally, a party may not seek discovery before a Rule 26(f) conference unless authorized by a court order. Fed. R. Civ. P. 26(d)(1). District courts exercise considerable discretion in discovery matters, and this Court has adopted the "good-cause" standard to determine whether a party is entitled to expedited discovery. *See Malibu Media, LLC v. Doe*, No. SA-19-CV-00962- DAE, 2019 WL 4003086, at *1 (W.D. Tex. Aug. 23, 2019) (citations omitted). Under this standard, courts consider the record and the reasonableness of the request in light of all the surrounding circumstances. *Id.* (citation omitted). "If a plaintiff seeks a subpoena to identify an anonymous Internet user, the court must also balance the need for disclosure against the defendant's expectation of privacy." *Id.* (internal quotation marks and citation omitted). Courts making this determination commonly consider the following factors: (1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's expectation of privacy. *Entm't v. Does 1-1, 427*, No. 2:11- cv-269, 2012 WL 12897376, at *2 (E.D. Tex. Mar. 16, 2012) (citing *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004)).

## III.    ANALYSIS

Plaintiff has met its burden to show good cause exists for limited expedited discovery. First, Plaintiff has established a prima facie claim of copyright infringement and violations of the DMCA. Plaintiff alleges that it is the owner of the copyrights being infringed and that Defendants reproduced and used the copyrighted works without Plaintiff's authorization using internet subscriber accounts identified by IP addresses. Plaintiff further alleges that in doing so,

2

Defendants thwarted the technological measures Plaintiff used to control access to the software. Second, Plaintiff seeks to obtain limited discovery from ISPs for identifying information associated with the IP addresses. Third, Plaintiff has established that it lacks alternative means to obtain the information sought in the proposed subpoena because only the ISP who assigned the IP address can identify the user. Fourth, the identities and residences of Defendants are critical to Plaintiff's ability to advance its claims—without it, Plaintiff will be unable to serve process. Finally, Defendants, as ISP subscribers, have "a minimal expectation of privacy in the sharing of copyrighted material." *Malibu Media*, 2019 WL 4003086 at *2 (internal quotation marks and citation omitted). Put simply, all factors discussed above support disclosure of Defendants' identities.

## IV.    CONCLUSION

For the above reasons, Plaintiff's Motion for Leave to Serve Third-Party Subpoenas Prior to a Rule 26(f) Conference (ECF No. 3) is hereby **GRANTED.**

**SIGNED** this __ day of _____, 2025.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

ANSYS, INC.,                          §
                                      §
        *Plaintiff,*                  §
                                      §
v.                                    §        CASE NO. 6:25-CV-00292-ADA-DTG
                                      §
DOES 1 THROUGH 323,                   §
                                      §
        *Defendants,*                 §

ORDER GRANTING THE PLAINTIFF'S EX PARTE
MOTION FOR EXPEDITED DISCOVERY (DKT. NO. 3)

Before the Court is the plaintiff's ex parte motion for leave to serve third-party subpoenas

before the parties' Rule 26(f) conference (Dkt. No. 3). For the reasons set forth below, the

plaintiff's motion is **GRANTED**.

## I.    BACKGROUND

On July 10, 2025, the plaintiff, ANSYS, Inc., filed a complaint against Does 1

through 323, alleging copyright infringement and violations of the Digital Millenium Copyright

Act. Dkt. No. 1. The plaintiff is a global leader in engineering simulation software that licenses

its software programs to its customers. *Id.* ¶¶ 2–4. The plaintiff's software is protected by

numerous U.S. copyright registrations. *Id.* ¶¶ 38–53. The plaintiff alleged that the defendants

obtained, installed on their computer systems, and used pirated Ansys software, committing

willful copyright infringement and violations of the Digital Millenium Copyright Act. *Id.* ¶¶ 5,

54–67. The defendants have been identified only by the Internet Protocol address through which

the copyrighted works were allegedly downloaded. *Id.* ¶¶ 23–34.

The plaintiff has filed a motion for leave to serve third-party subpoenas on internet

service providers to obtain the names, addresses, email addresses, and phone numbers

corresponding to the IP addresses prior to a Rule 26(f) conference. Dkt. No. 3 at 5. Because the

defendants have not been identified by name, the defendants have not filed an answer or entered

a formal appearance in this case.

## II.     ANALYSIS

The Court finds that good cause exists to permit the plaintiff to conduct limited expedited

discovery. Under Rule 26 of the Federal Rules of Civil Procedure, a party generally cannot seek

discovery from any source before the Rule 26(f) conference. Fed. R. Civ. P. 26(d)(1). While the

Federal Rules of Civil Procedure do not provide a standard to determine whether a party is

entitled to expedited discovery, the Rules allow expedited discovery when authorized by the

Court. Fed. R. Civ. P. 26(d)(1) (allowing a party to seek discovery before a Rule 26(f) conference

by court order); *see also* Fed. R. Civ. P. 34(b)(2)(A) (providing that a court may order shorter

response times to discovery requests). Courts generally use one of two standards in exercising

authority to order expedited discovery—a preliminary injunction style analysis or a good cause

standard. *St. Louis Grp., Inc. v. Metals & Additives Corp.*, Inc., 275 F.R.D. 236, 239 (S.D. Tex.

2011).

Though the Fifth Circuit has not adopted a standard, many courts in this circuit, including

this Court, have adopted the good cause standard. *Id.*; *see also Landry's, LLC v. Landry*

*Distilling Inc.*, No. 1:23-CV-00571-RP, 2023 WL 7190726, at *2 (W.D. Tex. Nov. 1, 2023)

(applying the good cause standard to a motion for expedited discovery). "If a plaintiff seeks a

subpoena to identify an anonymous Internet user, the court must also balance the need for

disclosure against the defendant's expectation of privacy." *See Malibu Media, LLC v. Doe*, No.

SA-19-CV-00962-DAE, 2019 WL 4003086, at *1 (W.D. Tex. Aug. 23, 2019) (internal quotation

marks and citation omitted). Courts making this determination commonly consider the following

factors: (1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's expectation of privacy. *Entm't v. Does 1-1, 427*, No. 2:11- cv-269, 2012 WL 12897376, at *2 (E.D. Tex. Mar. 16, 2012) (citing *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004)).

The party seeking expedited discovery bears the burden of establishing that good cause exists. *St. Louis Grp.*, 275 F.R.D. at 240. When, as is the case here, the opposing party has not been served with process or filed a formal appearance in the case, Courts require the party "to bear a 'heavy burden in establishing that ex parte relief is warranted.'" *Grae v. Alamo City Motorplex, LLC*, No. 5:18-CV-664-DAE, 2018 WL 4169309, at *4 (W.D. Tex. July 2, 2018) (citing *Source Prod. & Equip. Co., Inc. v. Schehr*, No. 16-17528, 2017 WL 45221, at *1–2 (E.D. La. Jan. 4, 2017) (collecting cases))).

The plaintiff has met its burden to show good cause exists for limited expedited discovery. First, the plaintiff has established a prima facie claim of copyright infringement and violations of the Digital Millenium Copyright Act. The plaintiff alleges that it is the owner of the copyrights being infringed and that the defendants reproduced and used the copyrighted works without the plaintiff's authorization using internet subscriber accounts identified by IP addresses. The plaintiff further alleges that in doing so, the defendants thwarted the technological measures the plaintiff used to control access to the software. Second, the plaintiff seeks to obtain limited discovery from ISPs for identifying information associated with the IP addresses. Third, the plaintiff has established that it lacks alternative means to obtain the information sought in the proposed subpoena because only the ISP who assigned the IP address can identify the user.

Fourth, the identities and residences of the defendants are critical to the plaintiff's ability to advance its claims—without it, the plaintiff will be unable to serve process. Finally, the defendants, as ISP subscribers, have "a minimal expectation of privacy in the sharing of copyrighted material." *Malibu Media*, 2019 WL 4003086 at *2 (internal quotation marks and citation omitted). The Court finds that all factors discussed above support disclosure of the defendants' identities.

## III.    CONCLUSION

The Court **GRANTS** the plaintiff's motion for leave to serve third-party subpoenas prior to the parties' Rule 26(f) conference (Dkt. No. 3).

**SIGNED** this 18th day of July, 2025.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE

JOHN DOE
(313) 236-8927
THE UPS STORE #5157
STE 235
3245 MAIN ST
FRISCO  TX 75034-4412

1 LBS        1 OF 1
SHP WT: 1 LBS
DATE: 21 AUG 2025

SHIP US DISTRICT CLERKS OFFICE
TO:  RM 380
     800 FRANKLIN AVE
     WACO  TX 76701-1934

RECEIVED
AUG 2 2 2025

TX 767 0-12



UPS GROUND
TRACKING #: 1Z 9V8 479 03 2031 1859



BILLING: P/P